UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

---

In re: JAMES T. ANDERSON, as owner of the sailing vessel, CATSHOT, a 44-Foot Voyage Catamaran, for Exoneration from or Limitation of Liability,

No. C09-1436RSL

ORDER GRANTING IN PART AND CONTINUING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

This matter comes before the Court on Limitation Plaintiff James T. Anderson's Motion for Limitation and Summary Judgment (Dkt. # 19). Pursuant to the Limitation of Liability Act, 46 U.S.C. § 30505, Plaintiff asks the Court to conclude that he is entitled to limit his liability for any action arising from the loss of his vessel, the CATSHOT, and its crew to the CATSHOT's value at the end of the voyage. He also asks the Court to dismiss the Jones Act and common law wrongful death claims brought against him by Counter-Claimant Sonia Beckham, the wife of one of the CATSHOT's deceased crew members. The Court agrees in part.[1]

Counter-Claimant's allegations establish that the Death on the High Seas Act ("DOHSA"), 46 U.S.C. §§ 30301–30308, applies. Accordingly, Counter-Claimant's common law claims are precluded, and her causes of action are limited to either a DOHSA or Jones Act claim. Therein lies the rub. Because Counter-Claimant concedes that she has not been appointed her deceased husband's personal representative, she lacks statutory standing to bring

---

[1] The Court also notes that Counter-Claimant has objected to many of the assertions in Plaintiff's declarations. Dkt. ## 27, 27-2. Because Counter-Claimant failed to comport with Local Rule 7(g) by including her objections in her responsive brief, the Court declines to consider them.

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 1

either claim. Thus, as the case currently stands, there is no basis for liability and the Court could simply enter summary judgment in Plaintiff's favor on his § 30505 action.

That said, in light of the circumstances underpinning this case, the Court thinks it inequitable to penalize Counter-Claimant so heavily for what appears to be a fundamental error on the part of her counsel. See Opp. (Dkt. # 27-3) at 11. Thus, while the Court harbors serious doubt as to whether Counter-Claimant's substantive claims have any merit, the Court exercises its discretion to continue the remainder of Plaintiff's motion to afford Counter-Claimant a reasonable opportunity to undertake the actions necessary to obtain standing.

## I. BACKGROUND

The circumstances underpinning this suit are tragic. In early December 2006, Plaintiff's catamaran was lost off the coast of Oregon. Complaint (Dkt. # 1) at ¶¶ 2.12–2.13. Of the three sailors assumed to be aboard, none were found alive. Id. at ¶ 2.15. Only Richard Beckham's body has ever been recovered. Id.

Notably, the CATSHOT was a young ship. Plaintiff had contracted to purchase her in February 2006 from her South African builder, Voyage Yachts Ltd. Anderson Decl. (Dkt. # 21) at 1. The purchase price included delivery by Voyage Yachts' "in-house delivery crew" to Port Townsend, Washington. Id. at 2; see Dkt. # 25 at 23 (Schedule C of the Agreement of Sale). When it came time for delivery, however, Voyage Yachts informed Plaintiff that its crew would not be available to deliver the ship. Anderson Decl. (Dkt. # 21) at 2; Opp. (Dkt. # 27-1) at 17–18. Instead, Voyage Yachts contracted with Reliance Yacht Deliveries, Ltd., to deliver CATSHOT to Plaintiff. Anderson Decl. (Dkt. # 21) at 2; Opp. (Dkt. # 27-1) at 17–18. Reliance placed Captain John Anstess in command of the vessel and a small crew. Opp. (Dkt. # 27-1) at 18–19. After Anstess equipped the CATSHOT with an Italian-made life raft, he set sale from South Africa in August. Opp. (Dkt. # 27-1) at 48–49, 54–55. Per South African law, Plaintiff took title to the CATSHOT prior to departure. Anderson Decl. (Dkt. # 21) at 2.

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 2

Along the way, there were many setbacks. Due to weather conditions, the CATSHOT had to return to Aruba. Opp. (Dkt. # 27-1) at 106. In Trinidad, two of the original three crewmen decided to "jump ship"—a decision that delayed the ship's progress for several weeks as Reliance looked for replacement crew members with "more staying power." Id. Though replacements were eventually found and flown to Trinidad, id. at 100, they too did not last long. Both left the vessel in Marina del Rey, California, a move that prompted Captain Anstess to hire Beckham and a third person to help him complete the delivery. Answer (Dkt. # 9) at 5–6 ¶ 1.3.

Unfortunately, that crew would never reach their destination. After stopping again in San Francisco, the ship was caught in a severe storm "approximately 10 nautical miles west of the shoreline at or near Lincoln City, Oregon." Id. at 6 ¶ 1.4. In winds in excess of 100 mph, the CATSHOT is believed to have capsized and broken apart. Id. at 6 ¶ 1.5. The entire crew is believed dead, though, as noted, Beckham's body was the only one ever recovered.

Following the death of her husband, Counter-Claimant filed a wrongful death suit against Plaintiff, Voyage, Reliance, and the estate of John Anstess in Los Angeles Superior Court. Complaint (Dkt. # 1) at ¶ 2.17. Plaintiff learned of the suit on April 27, 2009. Id. at ¶ 2.18. He filed a motion to quash for lack of personal jurisdiction, which was granted on June 11, 2009. Id. at ¶ 2.19. Counter-Claimaint subsequently refiled against him in King County Superior Court. Id. at ¶ 2.20. Plaintiff responded by filing the instant limitation action with this Court on October 13—a few weeks before the expiration of the six-month period for doing so. See 46 U.S.C. § 30511(a) ("The owner of a vessel may bring a civil action in a district court of the United States for limitation of liability under this chapter. The action must be brought within 6 months after a claimant gives the owner written notice of a claim.").

The next day, the Court stayed all pending actions against Plaintiff and CATSHOT arising from this incident and enjoined any further actions. It ordered that any party that wished to file a claim against Plaintiff do so by filing a claim in this matter no later than November 23, 2009. See § 30511(c). Sonia Beckham was the only party to file a claim.

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 3

## II. DISCUSSION

Plaintiff raises three points in his motion for summary judgment. First, he contends that he is entitled to limit his liability pursuant to § 30511 because there is no evidence that any unseaworthy condition caused the loss of the CATSHOT and its crew or, if there is, that he had no "privity or knowledge" of that condition. Mot. (Dkt. # 19) at 8–10. Second, he argues that the decedent was employed by Reliance, not him, and thus he cannot be liable under the Jones Act. Finally, he asserts that Counter-Claimant's own judicial admissions establish that DOHSA applies to preclude Counter-Claimant's common law claims and that Counter-Claimant lacks standing under DOHSA to bring a claim.

Notably, the Court can grant Plaintiff's motion only if it is satisfied that there is no genuine issue of material fact and that judgment is therefore appropriate as a matter of law. Fed. R. Civ. P. 56(c). As the moving party, Plaintiff bears the initial burden of informing the Court of the basis for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). He must prove each and every element of his claims or defenses such that "no reasonable jury could find otherwise." Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 962 (Fed. Cir. 2001). In doing so, he is entitled to rely on nothing more than the pleading themselves. Celotex, 477 U.S. at 322–24. If the movant makes that initial showing, the burden shifts to the nonmoving party to show by affidavits, depositions, answers to interrogatories, admissions, or other evidence that summary judgment is not warranted because a genuine issue of material fact exists. Id. at 324.

To be material, the fact must be one that bears on the outcome of the case. A genuine issue exists only if the evidence is such that a reasonable trier of fact could resolve the dispute in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." Id. at 249–50. In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 150 (2000).

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 4

With these standards in mind, the Court turns first to the viability of the counter-claims. It then considers whether Plaintiff may limit his liability under § 30505.

### A. The Counter Claims

As discussed, Counter-Claimant alleges that Plaintiff is liable both under the Jones Act and for common law negligence and unseaworthiness. Plaintiff counters by arguing first that Counter-Claimant cannot bring a claim against him under the Jones Act as he was not the decedent's employer and, second, that her common law claims are preempted by DOHSA and that she lacks standing to bring a DOHSA claim. The Court agrees, though it ultimately resolves both claims on the issue of standing.

### 1. The Jones Act

As amended, the Jones Act allows a "seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman . . . [to] bring a civil action at law, with the right of trial by jury, against the employer." 46 U.S.C. § 30104. The Act has two threshold requirements. First, it provides a cause of action only to injured seamen or their personal representatives. Id.; Graca v. Rosebank Mar., Inc., No. 04–14302, 2005 WL 6458603, at *2 (11th Cir. 2005) (per curiam); Ivy v. Sec. Barge Lines, Inc., 585 F.2d 732, 734 (5th Cir. 1978). Second, it limits that cause of action to suits against the seaman's employer. § 30104; Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 787 n.6 (1949).

Plaintiff focuses on the second requirement—arguing that under the known facts no reasonable juror could conclude that he was the decedent's employer. Mot. (Dkt. # 19) at 10–13. The Court thinks Plaintiff makes a compelling case. Though "[w]hether an 'employer/employee relationship' exists is . . . usually a question of fact that should go to the jury," Omar v. Sea-Land Serv., Inc., 813 F.2d 986, 989 (9th Cir. 1987), the Supreme Court has noted that there are circumstances under which it is clear that the required relationship does not exist: "One must look at the venture as a whole [to determine who a seaman's employer was]. Whose orders controlled the master and the crew? Whose money paid their wages? Who hired the crew?

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 5

Whose initiative and judgment chose the route and the ports?" Cosmopolitan, 337 U.S. at 795; see also Glynn v. Roy Al Boat Mgmt. Corp., 57 F.3d 1495, 1498–90 (9th Cir. 1995) (applying Cosmopolitan), overruled on other grounds by Atl. Sounding Co., Inc. v. Townsend, 129 S. Ct. 2561 (2009). And, in this case, these factors strongly tilt in Plaintiff's favor.

Certainly, the evidence demonstrates that Reliance, not Plaintiff, hired the crew, both the originals and their replacements. Opp. (Dkt. # 27-1) at 17–22 (original crew members); id. at 100 (Trinidad replacements). Counter-Claimant does not dispute that Plaintiff had no contact whatsoever with any of the crew at any point and did not even know their identities until after the CATSHOT was lost. Neither does she dispute that Plaintiff had no contact at all with Reliance, apart from requests for updates as to the vessel's progress. Counter-Claimant's own evidence also demonstrates that only Reliance's orders controlled the master and the crew. See id. at 38, 40, 106. When problems arose, Captain Anstess contacted Reliance, not Plaintiff. Id. at 47–50. And Reliance, not Plaintiff, told Captain Anstess and the crew what route to take and when and where to sail. Id. at 47.

It is also undisputed that Reliance's money paid the crew. As discussed, Plaintiff paid Voyage to have its crew to deliver the CATSHOT to Washington. Id. at 17–18. When a conflict arose, Voyage hired Reliance and Reliance hired the crew.[2] Id. at 18–19. Moreover, Plaintiff submitted a declaration in support of his motion in which he swore that he never paid any wages to the crew or even know of the decedent's identity until after the accident. Dkt. # 25 at ¶ 8. Counter-Claimant has submitted nothing to create even an issue as to those sworn facts.[3]

---

[2] In this regard, the Court thinks a compelling case could be made that the circumstances at issue here are analogous to a demise charter and therefore subject to the same outcome. Plaintiff has not, however, raised that argument.

[3] Rather, Counter-Claimant relies predominately on her position that the owner of a vessel is necessarily its crew's employer. Admittedly, that is a good starting point. In most cases, the owner is also the employer. However, as the Cosmopolitan test demonstrates, that is not always the case.

In addition, if Counter-Claimant wishes to rely on an agency theory to hold Plaintiff accountable

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 6

Ultimately, however, the first threshold issue obviates the need for the Court to resolve the "employer/employee" question at this point. As § 30104 states, only an injured seaman or his or her personal representatives has capacity under the Act to sue. And, as Counter-Claimant concedes in her Opposition, she is not the decedent's personal representative. Opp. (Dkt. # 27-3) at 10–11. Nor has she made any attempt to undertake the steps necessary to be appointed the decedent's personal representative. Accordingly, this Court has no choice but to conclude that she lacks the capacity to bring a Jones Act claim. Graca, 2005 WL 6458603, at *2 ("[W]hen the district court acted, Graca was not the personal representative of the estate. Because Graca lacked the capacity to sue when the district court entered its order, the order was not erroneous."); Ivy, 585 F.2d at 734; see also Kole v. Korean Air Lines Co., Ltd., 92 F.3d 1192, at *1 (9th Cir. 1996) (memorandum) (concluding that the district court erred in not granting summary judgment to Korean Air on the ground that "Kole lacked standing under DOHSA because he was not the personal representative for his wife's estate"); Alcabasa v. Korean Air Lines Co., Ltd., 62 F.3d 404, 407–08 (D.C. Cir. 1995) (affirming the district court's grant of summary judgment to the alleged "employer" on the grounds that the widower "lacked standing to bring [his DOHSA claim] because he was not the personal representative of the deceased").

Because Counter-Claimant is not the decedent's personal representative, she cannot bring a Jones Act claim.

### 2. DOHSA's Application

The same "standing" frailty dooms Counter-Claimant's claim under DOHSA, which applies to preclude her common law negligence and unseaworthiness claims.

---

for Reliance's actions, she must present some evidence in support. Berg v. Fourth Shipmor Assocs., 82 F.3d 307, 311–12 & n.4 (9th Cir. 1996). The Court will not simply assume that Reliance acted as Plaintiff's agent, especially given the fact that Counter-Claimant's own evidence so clearly demonstrates that Plaintiff had no right to control Reliance's daily actions, which suggests that Reliance was Voyage's agent, not Plaintiff's. See Schmidt v. Burlington N. & Santa Fe Ry. Co., 605 F.3d 686, 690–91 (9th Cir. 2010).

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 7

Congress has provided only two federal remedies to heirs of seamen who die on the high seas: DOHSA and the Jones Act. Davis v. Bender Shipbuilding & Repair Co., Inc., 27 F.3d 426, 428 n.1 (9th Cir. 1994); see Dooley v. Korean Air Lines Co., Ltd., 524 U.S. 116, 124 (1998); Bowoto v. Chevron Corp., 621 F.3d 1116, 1123 (9th Cir. 2010). DOHSA applies whenever "the death of an individual is caused by wrongful act, neglect, or default occurring on the high seas beyond 3 nautical miles from the shore of the United States." § 30302. It provides that when such a death occurs "the personal representative of the decedent may bring a civil action in admiralty against the person or vessel responsible." Id. And, when DOSHA applies, it applies exclusively, "preempt[ing] all survival claims for deaths on the high seas" other than the Jones Act. See Bowoto, 621 F.3d at 1125.

In the present case, there is only one hurdle to DOHSA's application: Counter-Claimant's assertion that "[t]here is no evidence by Mr. Anderson that Mr. Beckman drowned more or less than 3 miles from shore. If Mr. Beckman drowned within three miles from shore, the DOHSA does not apply." Opp. (Dkt. # 27-3) at 10–11. The hurdle is a low one.

As Plaintiff points out, it is the likely site of the accident that controls, not "where death actually occurs." Reply (Dkt. # 29) at 10–11 (quoting Bergen v. F/V St. Patrick, 816 F.2d 1345, 1348 (9th Cir. 1987) ("This provision has been held to refer to the site of an accident on the high seas, not to where death actually occurs or where the wrongful act causing the accident may have originated. It is therefore irrelevant that some of the St. Patrick's crew may have died in territorial waters." (citations omitted))). Accordingly, Plaintiff can simply rely on Counter-Claimant's own unrebutted allegation that the CATSHOT capsized "approximately 10 nautical miles west of the shoreline at or near Lincoln City, Oregon, and within US [sic] territorial waters." Compare Answer (Dkt. # 9) at 6 ¶ 1.4., with Celotex, 477 U.S. at 322–24. Ten nautical miles is well beyond the three required, and, contrary to Counter-Claimant's unsupported contention, U.S. territorial waters begin 12 nautical miles from shore, not three. Helman v. Alcoa Global Fasteners, Inc., 637 F.3d 986, 991 (9th Cir. 2011).

As Counter-Claimant has not sought to amend that allegation, or otherwise introduced any evidence to put its own allegation at issue,[4] she is bound by it. Am. Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them."). DOHSA applies and preempts Counter-Claimant's common law negligence and unseaworthiness claims. The Court thus GRANTS Plaintiff's motion to the extent he seeks dismissal of those claims.

Having concluded that DOHSA applies, the Court is confronted again with the issue of Counter-Claimant's standing. As noted earlier, only a decedent's personal representative can bring a DOHSA claim, and Counter-Claimant concedes that she has not been appointed decedent's representative. Thus, she cannot bring a DOHSA claim. E.g., Kole, 92 F.3d at *1; Alcabasa, 62 F.3d at 407–08.

### B. Limitation of Liability

Finally, the Court turns to the issue of the Limitation of Liability Act, now codified at 46 U.S.C. § 30505,[5] which applies to both commercial vessels and non-commercial "pleasure

---

[4] Quite to the contrary, Counter-Claimant concedes that the only admissible evidence of the CATSHOT's location when it capsized, the log book, affirms that the vessel was approximately 10 nautical miles off the Oregon coast. Opp. (Dkt. # 27-3) at 10–11; 46 U.S.C. § 6308(a) (providing that "no part of a report of a marine casualty investigation conducted under section 6301 of this title, including findings of fact, opinions, recommendations, deliberations, or conclusions, shall be admissible as evidence or subject to discovery in any civil or administrative proceedings, other than an administrative proceeding initiated by the United States").

[5] That section provides:

(a) In general.–Except as provided in section 30506 of this title, the liability of the owner of a vessel for any claim, debt, or liability described in subsection (b) shall not exceed the value of the vessel and pending freight. If the vessel has more than one owner, the proportionate share of the liability of any one owner shall not exceed that owner's proportionate interest in the vessel and pending freight.

(b) Claims subject to limitation.–Unless otherwise excluded by law, claims, debts, and

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 9

craft." Matter of Hechinger, 890 F.2d 202, 206 (9th Cir. 1989).

In simple terms, the Act "limits shipowner liability arising from the unseaworthiness of the shipowner's vessel or the negligence of the vessel's crew unless the condition of unseaworthiness or the act of negligence was within the shipowner's 'privity or knowledge.'" In re BOWFIN M/V, 339 F.3d 1137, 1137 (9th Cir. 2003) (per curiam). Ascertaining whether a shipowner may limit his liability is a two-step process. Id.; Hechinger, 890 F.2d at 207. "First, the court must determine what acts of negligence or conditions of unseaworthiness caused the accident." Hercules Carriers, Inc. v. Claimant State of Fla., Dept. of Transp., 768 F.2d 1558, 1563–64 (11th Cir. 1985) (quoting Farrell Lines, Inc. v. Jones, 530 F.2d 7, 10 (5th Cir. 1976)); accord Hechinger, 890 F.2d at 207. "That is, a liability must be shown to exist." Hechinger, 890 F.2d at 207.

"Second, the court must determine whether the shipowner had knowledge or privity of those same acts of negligence or conditions of unseaworthiness" that caused the accident. Hercules, 768 F.2d at 1564. "This burden is not met by simply proving a lack of actual knowledge, for privity and knowledge is established where the means of obtaining knowledge exist, or where reasonable inspection would have led to the requisite knowledge." Id. The claimant bears the initial burden of establishing the unseaworthy condition or negligence that served as the "causative agent." Carr v. PMS Fishing Corp., 191 F.3d 1, 4 (1st Cir. 1999); Hercules, 768 F.2d at 1564. "If the claimant succeeds in that first-stage endeavor, the burden then shifts to the shipowner to establish its lack of privity and knowledge." Carr, 191 F.3d at 4 (citing Hercules, 768 F.2d at 1564).

---

liabilities subject to limitation under subsection (a) are those arising from any embezzlement, loss, or destruction of any property, goods, or merchandise shipped or put on board the vessel, any loss, damage, or injury by collision, or any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of the owner.

(c) Wages.–Subsection (a) does not apply to a claim for wages.

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 10

In the present case, Counter-Claimant alleged a long list of unseaworthy and negligent conditions in her original complaint, including:

– the failure to provide life vests or survival suits;

– the presence of a malfunctioning vessel tracking system;

– knowledge that "Master Captain John Anstess had no experience sailing in the Northwest, and was unfamiliar in the area";

– knowledge that the weather conditions in December made travel unsafe;

– knowledge that prior crew members had departed the CATSHOT due to safety concerns, yet refusing to allow the CATSHOT to be wintered in California;

– knowledge that the CATSHOT had experienced stress related damage that rendered it unsafe;

– knowledge that Anstess had concerns about the preferred route, yet refusing to allow him to proceed along his preferred route; and

– violation of "safety standards (no survival suits, no radar, no proper communication gear, no proper life boat for ocean travel)."

Answer (Dkt. # 9) at 6–8 ¶ 2.3.

In her Opposition, Counter-Claimant narrows her bases for opposing limitation. She now relies only on Plaintiff's alleged knowledge of the following eight conditions to argue liability:

> (a) the Italian made life raft not being serviceable in the US [sic] and not Coast Guard approved, (b) the vessel not being equipped with the requisite safety or emergency survival equipment, (c) the spotty reporting through Yacht-Control, (d) . . . the weather conditions in the Pacific Northwest where the vessel was traveling during the period in question, (e) the ability to communicate directly with the vessel, (f) communications with Reliance regarding the vessel's location and status, (g) the 2% discount on the purchase if the boat was shown at the Seattle Boat Show in January, and (h) the potential to earn 2% if a boat was purchased at the Seattle Boat Show.

Opp. (Dkt. # 27-3) at 7. This narrowing of conditions is not surprising. In her responses to Plaintiff's interrogatories, Counter-Claimant has denied any allegation of negligence on the part

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 11

of Captain Anstess. Dkt. # 20 at 9 (Interrogatory 14). And, a shipowner's "privity or knowledge" of unseaworthy conditions is limited to conditions that exists "at or prior to the commencement of a voyage." Hechinger, 890 F.2d at 207; accord Hercules, 768 F.2d at 1563. Thus, some conditions that arose post-departure, e.g., stress-related damage or crew departures, have no bearing on limitation absent circumstances not raised by Counter-Claimant here.

Even narrowed, however, Counter-Claimant's contentions suffer from a dispositive flaw: because Counter-Claimant lacks standing to bring a claim for liability, and because no other claimant has stated a case for liability, no claim exists for which Plaintiff could be liable. See Hechinger, 890 F.2d at 207–10. And, "[i]f no liability exists there is nothing to limit." Id. at 207 (quoting N. Fishing & Trading Co., Inc. v. Grabowski, 477 F.2d 1267, 1272 (9th Cir. 1973)). Accordingly, Plaintiff would be entitled to summary judgment on his limitation claim absent further action by Counter-Claimant.

Notably, even if Counter-Claimant does take the necessary steps to obtain standing, serious questions still exist as to the viability of her claim. For instance, Ninth Circuit case law suggests that post-departure negligence of a third party cannot, in most cases, be imputed to a shipowner. Waterman S. S. Corp. v. Gay Cottons, 414 F.2d 724, 733–34 (9th Cir. 1969); see Admiral Towing Co. v. Woolen, 290 F.2d 641, 648 (9th Cir. 1961). And, the only evidence currently before the Court is that the CATSHOT was lost not as a result of an unseaworthy condition or act of negligence but because it had the misfortune to be caught in a severe storm off the coast of Oregon—"an Act of God or peril of the sea" for which Plaintiff could not be liable. Hechinger, 890 F.2d at 207–10. Counter-Claimant needs to do far more than simply rely on her assertion that Plaintiff's duty was non-delegable if she wishes to survive summary judgment. See id. at 207 (noting that an owner's duty is simply to ensure that his or her vessel is "reasonably fit" for the purpose for which it is used); see also Anderson, 477 U.S. at 248 ("[A] party opposing summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 12

(citation and internal quotation marks omitted)).

## III.  CONCLUSION

For all of the foregoing reasons, the Court GRANTS Plaintiff's motion IN PART. Plaintiff is entitled to summary judgment on his assertion that, under the facts alleged, DOHSA applies to preclude Counter-Claimant's common law claims.

In all other respects, the Court exercises its discretion to continue Plaintiff's motion for 60 days to allow Counter-Claimant to demonstrate statutory standing.  Within 60 days of the date of this Order, Plaintiff may file an amended answer to demonstrate that she has been appointed the decedent's personal representative.[6]  If she does not, the Court will enter judgment in favor of Plaintiff.  If she does, the Court will permit Plaintiff to amend his summary judgment motion, provided he notices the Court within 7 days of the date of Counter-Claimant's amendment that he wishes to do so.  Otherwise, the Court will rule on the motion in its current form.

DATED this 24th day of January, 2012.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

---

[6] The Court's leave to amend is limited solely to the standing issue.

ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT – 13